[No. 44238. En Banc. January 7, 1977.]

*In the Matter of the* BALLOT TITLE FOR INITIATIVE 333.

WANDA H. RILEY, ET AL, *Petitioners, and* SLADE GORTON, *as Attorney General, Respondent.*

*Owens, Weaver, Davies & Dominick, Parks Weaver, Jr.,*
and *William D. Dexter,* for petitioners.

*Slade Gorton, Attorney General, Philip Austin, Deputy,*
and *Carol A. Smith* and *Wayne L. Williams, Assistants,*
for respondent.

*James N. Kamel,* amicus curiae.

HAMILTON J.—Petitioners filed a writ of certiorari with
this court seeking review of the trial court's dismissal of
their petition and appeal challenging an initiative ballot
title.

On April 27, 1976, a proposed initiative relating to public
employees' retirement plans was filed with the Secretary of
State's office and was assigned serial No. 333. Pursuant to
RCW 29.79.040, the Attorney General filed a ballot title for
Initiative 333.[1] On May 14, 1976, petitioners filed a petition

---

[1] "Within ten days after the receipt of an initiative or referendum measure the
attorney general shall formulate therefor and transmit to the secretary of state a
concise statement posed as a question and not to exceed twenty words, bearing
the serial number of the measure. The statement may be distinct from the legis-
lative title of the measure, and shall express, and give a true and impartial state-
ment of the purpose of the measure; it shall not be intentionally an argument, nor
likely to create prejudice, either for or against the measure. Such concise state-
ment shall constitute the ballot title. The ballot title formulated by the attorney
general shall be the ballot title of the measure unless changed on appeal." RCW
29.79.040.

and appeal in the Thurston County Superior Court challenging the ballot title. This petition and appeal was dismissed on the grounds that petitioners lacked standing under RCW 29.79.060 to maintain the challenge, because they were not the proposers of Initiative 333.[2]

Following a consideration of the briefs and oral arguments of petitioners and respondent and amicus curiae (representing the proposers of Initiative 333), this court issued an order that the writ be granted and that the case be remanded to the Superior Court for an immediate hearing and decision on the merits. We now set forth the rationale for the order.

Petitioners contend that RCW 29.79.060, insofar as it precludes opponents of the initiative from challenging the Attorney General's ballot title, is unconstitutional under Const. art. 1, § 12,[3] and the equal protection clause of the fourteenth amendment to the United States Constitution.[4]

██ The guaranty of equal protection and the prohibition of special privileges and immunities require that reasonable grounds must exist for making a distinction between those persons within and those persons without a specified class. *Markham Advertising Co. v. State*, 73 Wn.2d 405, 439 P.2d 248 (1968); *Seattle v. See*, 67 Wn.2d 475, 408 P.2d 262 (1965), *rev'd on other grounds*, 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967); *Clark v. Dwyer*, 56 Wn.2d 425, 353 P.2d 941 (1960).

---

[2]RCW 29.79.060, in part, provides:

"If the proposers are dissatisfied with the ballot title formulated by the attorney general, they may at any time within ten days from the filing thereof in the office of the secretary of state appeal to the superior court of Thurston county by petition setting forth the measure, the title formulated by the attorney general and their objections thereto and praying for amendment thereof."

[3]"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." Const. art. 1, § 12.

[4]U.S. Const. amend. 14, § 1, in part, provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

Respondent and amicus curiae argue that reasonable grounds do exist for restricting review of ballot titles to proposers of the initiative. Respondent argues that if opponents are allowed to challenge the ballot title, they will use this right to slow down the initial steps in readying petitions for signatures. An initiative must be filed with the Secretary of State's office within 10 months prior to the election, and the petitions with signatures must be filed not less than 4 months before the election.[5] This leaves a period of approximately 6 months to gather the needed signatures.

Fear of delay tactics by opponents is not a reasonable ground for excluding review by opponents. RCW 29.79.060 requires the filing of an appeal within 10 days from the time the Attorney General files the ballot title with the Secretary of State. It also provides that "the court shall *forthwith* . . . examine . . . the title . . . and shall *as soon as possible* render its decision . . . The decision of the superior court shall be final, . . ." (Italics ours.) These requirements adequately protect the proposers from challenges brought for delay purposes only. If it is patently clear that an appeal has been brought for delay purposes only, the trial court can and should dispose of the matter with great dispatch.

Amicus curiae argues that the initiative is the product of the proposers, and the purpose of the limited judicial review is to provide a remedy for proposers if the ballot title does not accurately reflect their intended purpose. We do not deny that the proposers of an initiative have a definite interest in a ballot title which reflects their intended purpose. However, this is not to say that opponents have no

---

[5]RCW 29.79.020 provides, in part:

"Initiative measures proposed to be submitted to the people must be filed with the secretary of state within ten months prior to the election at which they are to be submitted, and the petitions therefor must be filed with the secretary of state not less than four months before the next general state-wide election."

interest in a ballot title which accurately reflects the purpose of the initiative. Just as the ballot title may not accurately reflect the proposers' purpose, it may also be misleading in favor of the proposers' purpose. RCW 29.79-.040 provides the guidelines for drafting the ballot title. It requires the Attorney General to "give a true and impartial statement of the purpose of the measure; [the statement] shall not be intentionally an argument, nor likely to create prejudice, *either for or against* the measure." (Italics ours.) If impartiality is required, it is unreasonable to deny review to opponents. Denying review to opponents has the effect of allowing a ballot title which is favorable to the proposers' purpose to remain the permanent ballot title while allowing proposers to challenge a ballot title which is unfavorable to their purpose.

Finally, it is argued that limiting review to proposers is reasonable, because proposers are a readily identifiable group and opponents, who are not a readily identifiable group, have an adequate remedy in that any person may challenge the explanatory statement in the voters' pamphlet.[6] We do not believe it is reasonable to limit review to proposers merely because they are a more identifiable group than are opponents.[7]

---

[6]RCW 29.81 requires the Secretary of State to publish a voters' pamphlet and distribute it to each individual place of residence in the state. RCW 29.81.020(1), in part, provides:

(1) The attorney general shall prepare the explanatory statements required to be presented on the top portion of the two facing pages relating to each measure. Such statements shall be prepared in clear and concise language and shall avoid the use of legal and other technical terms insofar as possible. *Any person dissatisfied with the explanatory statement so prepared may at any time within ten days from the filing thereof in the office of the secretary of state appeal to the superior court of Thurston county by petition setting forth the measure, the explanatory statement prepared by the attorney general, and his objection thereto and praying for the amendment thereof.*
(Italics ours.)

[7]"If any legal voter or organization of legal voters of the state desires to petition the legislature to enact a proposed measure, or to submit a proposed initiative measure to the people, or to order that a referendum of any act, bill or law, or any part thereof, passed by the legislature be submitted to the people, he or they shall file in the office of the secretary of state five printed or typewritten copies of

 In *State ex rel. Berry v. Superior Court,* 92 Wash. 16, 159 P. 92 (1916), opponents of a proposed initiative brought an action to enjoin the Secretary of State and other persons from preparing petitions for the initiative. The opponents asserted the preamble to the proposed measure was argumentative. This court discussed the right of the opponents to bring the action.

> Now, are proponents proceeding in their legislative capacity by the prescribed method? As private members of the legislative body in mass, certain legal political rights are conferred upon them to be exercised in a prescribed manner. These rights must be considered as no greater than the rights of other members of the legislative body in mass to oppose the proposed measure. It cannot be assumed that the right of one legal voter to attempt to obtain the enactment of a given measure is greater than the right of other legal voters to attempt to prevent its passage. All are equal before the law. There is no presumption that, because certain legal voters or legislators desire and propose certain legislation upon a certain subject, the same is desired by the voters in mass. In fact, it can be assumed as a safe postulate that other members of the voting mass will oppose it. It is the sole ground of relators here that they are entitled to interfere in the matter because they are voters and do oppose the proposed measure, irrespective of the merits of the measure and regardless of the reasons for their opposition, and that if the proponents of the measure are proceeding in accordance with the positive law, their only recourse is at the polls. This position is sound.

*State ex rel. Berry v. Superior Court, supra* at 27.

Proposers are readily identifiable because they signed the proposed initiative. This does not mean opponents are so unidentifiable that it is reasonable to deny them a right to challenge the ballot title given by the Attorney General. First, opponents must be legal voters. Second, opponents

---

the measure proposed, or of the act or part thereof on which a referendum is desired, *accompanied by the name and post office address of the proposer, and by an affidavit that the proposer (if an individual) is, or that the members of the proposer (if an organization), are legal voters."* (Italics ours.) RCW 29.79.010.

must have an identifiable interest in challenging a misleading ballot title. This interest in challenging the ballot title must coexist with an alleged violation of RCW 29.79.040. If opponents meet the above criteria, they are sufficiently identifiable to seek review of the ballot title.

Further, it is unreasonable to limit review of the ballot title to proposers on the grounds that opponents can challenge the explanatory statement in the voters' pamphlet. The ballot title appears in the voters' pamphlet. RCW 29.81.010(1)(b).[8] The ballot title also appears on the ballots cast by voters at the election. RCW 29.79.070.[9] We can safely assume that not all voters will read the text of the initiative or the explanatory statement. Some voters may cast their votes based on the ballot title as it appears on their ballots. Thus, the outcome of the vote may be affected by the tenor of the ballot title.

In the instant case, the initiative involved related to public employee pension rights and benefits. Petitioners, as public employees, fearing passage of the initiative would have an adverse effect upon the integrity of existing pension programs, had a readily identifiable interest in seeking to judicially test the impartiality of the ballot title. They came into court within the time limit prescribed and required by RCW 29.79.060. Under these circumstances, equal protection and due process of law require that they be afforded the same right to challenge the ballot title as that afforded proponents, and the inherent power of the court to open its doors provides the access.

---

[8]"The voters' pamphlet shall contain as to each state measure to be voted upon, the following in the order set forth in this section:

"(1) Upon the top portion of the first two opposing pages relating to said measure and not exceeding one-third of the total printing area shall appear:

". . .

"(b) The official ballot title of the measure". RCW 29.81.010(1)(b).

[9]"When the ballot title has been finally established, the secretary of state shall file the instrument establishing it with the proposed measure and transmit a copy thereof by mail to the persons proposing the measure. *Thereafter such ballot title shall be the title of the measure in all petitions, ballots and other proceedings in relation thereto.*" (Italics ours.) RCW 29.79.070.

For the foregoing reasons, the order of dismissal was reversed, and the case was remanded to the Superior Court.

STAFFORD, C.J., and ROSELLINI, HUNTER, and BRACHTENBACH, JJ., concur.

[En Banc. January 27, 1977.]

WRIGHT, C.J. (dissenting)—I dissent. The majority has, in effect, rewritten this statute, and placed something in it that the legislature did not intend. Their excuse for this action is that otherwise the statute would violate the equal protection provisions of the state and federal constitutions. Const. art. 1, § 12 and U.S. Const. amend. 14.

The action provided in RCW 29.79.060 gives the proposers of a measure the right to appeal to superior court. No such right is given to any other person or group of persons. This procedure is strictly statutory, and would not be available without this legislation. When a special procedure is provided by statute, the terms of the statute are exclusive and mandatory. *Hatfield v. Greco,* 87 Wn.2d 780, 557 P.2d 340 (1976). If this act violates a constitutional provision, it must fall, but the courts may not add something to an act in an attempt to cure the defects. *State v. Robinson Co.,* 84 Wash. 246, 146 P. 628 (1915); *State v. Martinez,* 85 Wn.2d 671, 538 P.2d 521 (1975).

I believe, however, that RCW 29.79.060 is valid as written. This act does not involve a suspect classification, nor does it impinge upon a fundamental right. Therefore, under both Const. art. 1, § 12 and U.S. Const. amend. 14 the legislature need only have a rational basis for the classification. *Sonitrol Northwest, Inc. v. Seattle,* 84 Wn.2d 588, 528 P.2d 474 (1974). *State ex rel. O'Brien v. Towne,* 64 Wn.2d 581, 392 P.2d 818 (1964); *McGowan v. Maryland,* 366 U.S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961). The classification is valid. The proposers of an initiative measure have special duties which they and they alone must bear. They

prepare the text of the proposed enactment, they usually prepare a legislative title, and they have the duty of taking each of the steps required by statute. To classify the *proposers* of an initiative measure differently from all other persons is rational.

Another reason exists for denial of the writ. RCW 29.79-.060 provides "The decision of the superior court shall be final." This being a statutory remedy and the statutory provision being exclusive and mandatory, there is no provision for any form of review on the application of anyone. *Hatfield v. Greco, supra.*

For the reasons stated, the writ should be denied.

UTTER, HOROWITZ, and DOLLIVER, JJ., concur with WRIGHT, C.J.