[No. 15853-1-II.   Division Two.   June 24, 1994.]

SAVE OUR STATE PARK, ET AL, *Appellants,* v. BOARD OF CLALLAM COUNTY COMMISSIONERS, ET AL, *Respondents.*

*Craig A. Ritchie* and *Doherty, Doherty & Ritchie,* for appellants.

*David Bruneau, Prosecuting Attorney,* and *Christopher Melly, Deputy,* for respondents.

ALEXANDER, J. — Save Our State Park, et al. (S.O.S. Park) appeals an order of the Clallam County Superior Court denying its application for a writ of mandamus to compel the Board of Clallam County Commissioners (Board) to hold a public hearing and vote on a proposed initiative. S.O.S. Park contends that the trial court erred in denying the writ on grounds that the proposed initiative was outside the scope of the initiative power. We affirm.

S.O.S. Park presented an initiative petition to the Clallam County Auditor on July 22, 1991. The initiative petition proposed an ordinance that would repeal Clallam County's Planned Recreational Community Zone. The Auditor

registered the initiative petition that same day. The proposed initiative provided as follows:

## Initiative Number 1

Shall the Planned Recreational Community Zone be Repealed from the Clallam County Zoning Code?

AN ORDINANCE to repeal the Planned Recreational Community Zone, Chapter 33.39 of Title 33, the Clallam County Zoning Code.

SECTION 1. The voters of Clallam County disapprove of any zoning ordinance which states it will not alter the existing underlying zoning, but which actually permits a wide range of activities not presently permitted in the zones to which it may be applied. The allowed activities include pet kennels, spas, "tourist services", hotels, and intensive residential and commercial enterprises.

SECTION 2. The voters further disapprove of the unique provision in this zoning chapter, not allowed in other zones, which allows satellite developments, not contiguous to the main property, to take on the attributes of the Planned Recreational Community.[ ] Such satellite developments may be added at a later date at the request of either the owners or controllers of the 640 acre minimum size resort or by a joint application by the owners of all the property included. This exposes any neighborhood in Clallam County to unforeseen development.

SECTION 3. For the above reasons, the Planned Recreational Community Zone, Chapter 33.39 of the Clallam County Zoning Code, is hereby repealed.

SECTION 4. If any part, word or phrase of this Ordinance is held to be invalid or unconstitutional, the validity of the remaining portions of this initiative will not be affected. It is hereby expressly declared that this initiative and each part thereof would have been adopted irrespective of the fact that any one or other parts are declared invalid or unconstitutional.

After the supporters of the initiative obtained several thousand signatures on the petition, the Auditor determined that there was a sufficient number of signatures for validation. As required by provisions in the Clallam County Home Rule Charter (Clallam County Charter) and the Clallam County Code (CCC), the initiative petition was then transmitted by the Auditor to the Board for a public hearing and a subsequent vote on the proposed ordinance.[1]

---

[1]The Clallam County Charter and CCC set out the steps in the initiative process as follows: Sponsors are required to file initiative petitions with the Clallam County Auditor. Clallam County Charter § 8.40; CCC 37.01.010. The Auditor, after verifying the sufficiency of the signatures gathered by the spon-

The Board refused to hold a public hearing to consider the ordinance proposed in the initiative petition, resolving that "[n]o public hearing on the proposed initiative will be scheduled because the subject matter of the initiative is beyond the scope of authority of the people acting through the initiative". In support of its decision, the Board found that:

3. RCW 36.70. *et seq.* has granted the zoning authority to the Board of County Commissioners as the legislative authority of Clallam County, and not to Clallam County as a corporate entity. The exercise of that authority is not subject to repeal, amendment or modification by the people through the initiative process.

4. Strong policy considerations support placing the zoning authority with the legislative body of the County. Amendments to the zoning code "require an informed and intelligent choice by individuals who possess the expertise to consider the total economic, social and physical characteristics of the community." Consideration of these criteria can only be done by the Clallam County Board of Commissioners and Planning Commission, and not by the people acting through the initiative procedure.

(Citation omitted.)

S.O.S. Park applied for a writ of mandamus from the Clallam County Superior Court to compel the Board to hold a public hearing and conduct a vote to accept or reject the ordinance proposed in the initiative petition. The trial court denied the application on grounds that the subject of the proposed initiative was outside the scope of the initiative power under state law.[2] S.O.S. Park appeals.

# I

■ S.O.S. Park contends that the trial court erred in denying its request for a writ of mandamus. It asserts that

___

sors, must transmit the petition to the Board. Clallam County Charter § 8.40; CCC 37.01.110. The Board then must consider the proposed ordinance, hold a public hearing, and accept or reject the petition. Clallam County Charter § 8.50; CCC 37.01.120. If the Board rejects the proposed ordinance or if it takes no action within 60 days, the measure is sent to the voters. Clallam County Charter § 8.50; CCC 37.01.120.

[2]The trial court rejected a second argument put forward by the Board, which was that the Clallam County Charter prohibited, by its own terms, zoning related initiatives.

the Board should be compelled to hold a public hearing and then vote on the ordinance proposed by the initiative. A writ of mandamus is appropriate when the applicant is seeking to have an official perform a duty that the law specifically requires. *Department of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 251-52, 804 P.2d 1241 (1991).

Clallam County Charter § 8.50 provides in part that:

> The Commissioners shall consider the proposed ordinance. They shall hold a public hearing and shall adopt or reject the petition on a roll call vote. If the proposed ordinance is not enacted within sixty (60) days after its introduction, it shall be submitted to the voters . . ..[3]

*See also* CCC 37.01.120. S.O.S. Park asserts that under the above-quoted provisions of the Clallam County Charter, the Board has a mandatory legal duty to conduct a public hearing and then vote to accept or reject the ordinance proposed in the initiative petition. The Board responds here, as it did at the trial court, that it has no duty to hold a public hearing or vote because the proposed enactment exceeds the scope of the power of the people to initiate legislation.

At the outset, we address S.O.S. Park's contention that we limit our review at this time to whether mandamus should issue to compel the Board to hold a public hearing and vote on the matter, avoiding the question of whether the proposed ordinance is outside the scope of the initiative power. S.O.S. Park contends in that regard that the question whether its proposed initiative is within the scope of the initiative power is not yet ripe because the Board unquestionably has the power to adopt the proposed ordinance and if the Board were to do so, it would be unnecessary for the Board to place the proposal on the ballot.

We disagree that the question is not yet ripe for determination. S.O.S. Park seeks more than mere consideration of its proposal by the Board. Rather, it seeks an order from this court requiring the Board to conduct a hearing and *vote* on the proposal. It is fundamental that a citizen or group

---

[3]The use of the word "shall" generally imposes a mandatory duty. *Our Lady of Lourdes Hosp. v. Franklin Cy.*, 120 Wn.2d 439, 446, 842 P.2d 956 (1993).

proposing an ordinance cannot compel the Board to take action on the proposal unless the law requires the Board to do so. We must, therefore, determine if the Clallam County Charter contains a provision that requires the Board to consider an ordinance proposed in an initiative petition independent of whether it could be placed on the ballot.

The Clallam County Charter provides two ways in which the Board may be required to consider a proposed ordinance. Section 3.10 provides that "[o]rdinances may be introduced by any Commissioner". After a commissioner introduces a proposed ordinance, the Board "shall hold a public hearing . . . to consider the proposed ordinance". Clallam County Charter § 3.10. Clearly, S.O.S. Park's proposed ordinance was not introduced by a commissioner.

The second way that the Board can be required to consider a proposed ordinance is through the initiative process, which is described in detail in article 8 of the Clallam County Charter. That article requires that an initiative be filed, and that signatures be gathered and verified by the county auditor. The initiative is transmitted to the Board, which then has an opportunity to conduct a public hearing and vote on the proposal, and, indeed, adopt it if it chooses. Clallam County Charter §§ 8.10-.50. If the Board rejects the proposal, or if the Board fails to act within 60 days, the proposed ordinance "shall be submitted to the voters at the next regular or special election". Clallam County Charter § 8.50.

Our reading of the provisions of article 8 of the Clallam County Charter convinces us that the initiative "process" is composed of many different steps.[4] We are reluctant to read certain provisions of the initiative process independent of other provisions. In our judgment, the provisions of the Clallam County Charter calling for the Board to hold a public meeting and vote on an ordinance proposed by initiative petition are part of that process, and they are not severable

---

[4]Clallam County Charter § 8.10 refers to the "initiative and referendum *process*." (Italics ours.) *See also* CCC 37.01.010 ("sponsor of an initiative may begin in the initiative process by presenting a petition for registration").

from other component parts. A "process" is defined in the dictionary as a "continuing development from a beginning to a contemplated end" and a "succession of acts, events, or developmental stages". *Webster's Third New International Dictionary* 1808 (1986). We are satisfied that the Clallam County Charter provided for a succession of steps in the initiative process leading up to, if necessary, the eventual placement of the proposed ordinance on the ballot. If we were to read parts of that process without considering others, we would disrupt the balance that is inherent in such an intricate, detailed process.

In short, if S.O.S. Park is permitted to force a Board vote on its proposed ordinance through article 8 of the Clallam County Charter on a matter that might be outside the initiative power, the result would be inconsistent with the structure established in the Clallam County Charter.

## II

Having concluded that the Board may be required to hold a hearing and vote on an ordinance proposed by initiative petition only if the proposal is within the scope of the initiative power, we must next consider whether the proposed ordinance is beyond the power of the people to enact legislation through the initiative process.

The right of the people to enact laws through the initiative process is, of course, one of the foremost rights of the citizens of the State of Washington. Const. art. 2, § 1(a); *Schrempp v. Munro*, 116 Wn.2d 929, 932, 809 P.2d 1381 (1991); *State ex rel. Mullen v. Howell*, 107 Wash. 167, 171, 181 P. 920 (1919) (initiative and referendum are "the first of all the sovereign rights of the citizen"); *Save Our State Park v. Hordyk*, 71 Wn. App. 84, 89-90, 856 P.2d 734 (1993). The citizens of Clallam County demonstrated the fundamental importance they placed on the initiative process by providing in the Clallam County Charter that "[t]he first power reserved to the people is the initiative". Clallam County Charter § 8.20.

■ The presence of broad initiative powers in a county home rule charter does not, however, justify unlimited application of that power. Initiative powers under a county charter must be consistent with the constitution and laws of the State of Washington. Const. art. 11, § 4 ("Any county may frame a 'Home Rule' charter for its own government subject to the Constitution and laws of this state"); *Ruano v. Spellman*, 81 Wn.2d 820, 823-25, 505 P.2d 447 (1973); *Ford v. Logan*, 79 Wn.2d 147, 152-53, 483 P.2d 1247 (1971). Therefore, the ordinance proposed by initiative in this case must comply with any limitations placed on the initiative power by the State.

■ Courts will not generally examine the validity of a proposed initiative measure before it has been enacted. *Seattle Bldg. & Constr. Trades Coun. v. Seattle*, 94 Wn.2d 740, 745-46, 620 P.2d 82 (1980); *State ex rel. O'Connell v. Kramer*, 73 Wn.2d 85, 86-87, 436 P.2d 786 (1968). Courts will, however, consider certain objections to an initiative measure, including whether the proposed law is beyond the scope of the initiative power. *Seattle Bldg.*, 94 Wn.2d at 746 (citing cases); *Hordyk*, 71 Wn. App. at 92-93.

■ The power of the people to adopt legislation through initiative is, for instance, limited to actions that are legislative in nature, as opposed to administrative. *Bidwell v. Bellevue*, 65 Wn. App. 43, 46, 827 P.2d 339, *review denied*, 119 Wn.2d 1023 (1992). Another of the limitations placed on the initiative power, the relevant limitation in this case, is that if the Legislature statutorily delegates a particular power to the "legislative body" or "legislative authority" of a city or county government, initiative and referendum are precluded. *Snohomish Cy. v. Anderson*, 123 Wn.2d 151, 156, 868 P.2d 116 (1994); *Citizens for Financially Responsible Gov't v. Spokane*, 99 Wn.2d 339, 345, 662 P.2d 845 (1983); *Leonard v. Bothell*, 87 Wn.2d 847, 852-54, 557 P.2d 1306 (1976); *Neils v. Seattle*, 185 Wash. 269, 282-83, 53 P.2d 848 (1936); *Lince v. Bremerton*, 25 Wn. App. 309, 312-13, 607 P.2d 329 (1980).[5]

---

[5]One reason for this limitation of initiative and referendum rights is that many "duties assigned to the 'legislative authority' cannot be carried out by initiative or

The critical question here is whether the ordinance proposed in S.O.S. Park's initiative petition, which would, if enacted, repeal a section of the Clallam County Zoning Code, is beyond the scope of the initiative power. More specifically, the issue is whether Clallam County's authority to create its zoning code was delegated to the legislative authority of Clallam County, the Board, or to Clallam County.

To support its argument that the proposed ordinance is beyond the scope of initiative power, the Board relies on two cases where Washington courts have addressed this limitation on the power of the people to amend zoning laws through initiative or referendum. In *Leonard v. Bothell, supra,* our Supreme Court held that the Legislature, pursuant to RCW Title 35A, had vested the power to adopt and modify a zoning code with the city council. Because the Legislature granted that power to the city council and not the "corporate entity", referendum rights were necessarily "preclude[d]".[6] 87 Wn.2d at 853. The Supreme Court, therefore, struck down a proposed referendum challenging the decision to rezone certain property.

In *Lince v. Bremerton, supra,* we reached a similar conclusion in a case involving a proposed initiative to amend a city zoning ordinance. We held there that the Legislature had granted the zoning power to the legislative body of the City, the city council, and not to the City of Bremerton as a corporate entity. In reaching our decision, we rejected the argument that Bremerton was chartered under the state constitution, and therefore, was subject to different rules than

referendum" because statutes that direct a legislative authority to convene meetings and establish processes cannot be performed by the exercise of yes or no vote. *Anderson,* 123 Wn.2d at 156.

[6]In justifying its decision, the Supreme Court also relied on what it considered the strong policy reasons behind vesting zoning power with the legislative body of a city:

"Amendments to the zoning code or rezone decisions require an informed and intelligent choice by individuals who possess the expertise to consider the total economic, social, and physical characteristics of the community. . . . In a referendum election, the voters may not have an adequate opportunity to read the environmental impact statement or any other relevant information concerning the proposed land-use change." 87 Wn.2d at 854.

Bothell, a "code city". We noted in *Lince* that "Washington's general law grants and limits the zoning power to the legislative body of charter cities as well as code cities". 25 Wn. App. at 312. Citing RCW 35.63.110 and RCW 58.17.070, we further observed that both zoning and platting power were delegated to the legislative body and, therefore, initiative was not permitted in those areas. Finally, we cited a California case for the proposition that "'[t]he initiative law and the zoning law are hopelessly inconsistent and in conflict as to the manner of the preparation and adoption of a zoning ordinance.'" 25 Wn. App. at 313 (quoting *Hurst v. Burlingame*, 207 Cal. 134, 141, 277 P. 308, 311 (1929)).

S.O.S. Park responds that both *Lince* and *Leonard* may be distinguished because they involved a legislative grant of zoning power to cities, whereas the present case involves delegation of zoning authority to a county. They point out that the Clallam County Zoning Code, CCC 33.01 *et seq.*, was adopted pursuant to the statutory authorization of RCW 36.70, the Planning Enabling Act of the State of Washington (Act), whereas the vesting of power in a city council is governed by RCW Title 35.

S.O.S. Park is correct that the holdings in *Lince* and *Leonard* involve delegation of legislative power to cities, while this case involves the grant of power to a county. We must proceed, therefore, to examine the language of RCW 36.70 to determine if that statute contemplates delegation of zoning power to the legislative authority of a county. If it does, this case would be analogous to those cited above. On the other hand, if RCW 36.70 delegates the power to zone to the county, the cases would be distinguishable.

RCW 36.70 is the enabling statute that provides authority for a county to adopt and administer measures such as a comprehensive plan and zoning ordinances. *Durocher v. King Cy.*, 80 Wn.2d 139, 143, 492 P.2d 547 (1972). A comprehensive plan constitutes the "policies ... approved and recommended by the planning agency or initiated by the board and approved by motion by the board". RCW 36.70.020(6). The board may, by ordinance, either create a planning commission or a plan-

ning department. RCW 36.70.030, .040. The board may adopt by ordinance "official controls", which further the goals of the comprehensive plan. RCW 36.70.550.

Both parties cite various provisions in the Act that ostensibly demonstrate to whom the Legislature delegated authority. S.O.S. Park relies on RCW 36.70.050, which provides that "[u]pon the creation of a planning agency as authorized in RCW 36.70.030 and 36.70.040, a *county* may engage in a planning program". (Italics ours.) RCW 36.70.060 and .070 contain similar references to "*a county*". S.O.S. Park contends that the Legislature has "never, in the case of counties, distinguished between 'the county' and the body that exercises the powers of the county". It asserts, therefore, that the Legislature granted the power to zone to the county and not merely to the legislative authority of the county.

The Board responds by citing other provisions in the Act, including RCW 36.70.550, which refers to official controls being "adopted by ordinance by the *board*". (Italics ours.) It also relies on RCW 36.70.620 and .650, which provide for various determinations by the Board, as well as RCW 36.70.750, which provides that "[a]ny *board*, by ordinance, may establish [zoning] classifications". (Italics ours.) RCW 36.70.030 and RCW 36.70.040 provide that a planning department or commission can only be created by "ordinance" by the board. In addition, RCW 36.70.540 provides that "[w]henever a *county legislative authority* has approved . . . all or part of a comprehensive plan . . ." any future public construction must be cleared by the planning agency. (Italics ours.)

██ ██ In our judgment, the Legislature has clearly delegated the authority to approve a comprehensive plan, adopt official controls, and engage in zoning under RCW 36.70 to the legislative authority of the county. Therefore, applying the holdings of *Lince* and *Leonard*, initiative and referendum are precluded from altering or amending zoning ordinances passed by the Board under the Act. Although *Lince* and *Leonard* involved legislative delegation of power to city councils, we can postulate no reason for applying a different rule to counties. In fact, the policy reasons cited by *Leonard*

for restricting the power of the people to enact direct zoning legislation through initiative and referendum would apply equally to zoning by a county.

S.O.S. Park contends that the provisions of the Growth Management Act (GMA), RCW 36.70A, support its position that the Legislature intended to grant the power to zone to counties and not county legislative bodies. Washington's Supreme Court has concluded otherwise, holding that the GMA delegates the authority to create a countywide planning policy to the legislative authority of a county, not to the county as a whole or its electorate. *Anderson*, at 155-56. *Anderson* treats counties no differently than cities regarding statutory delegation to a legislative authority.[7]

In *Anderson*, the court was confronted with a proposed referendum involving a Snohomish County ordinance passed pursuant to the GMA. It held that the ordinance was not subject to referendum because RCW 36.70A.210 "delegates the authority for creating a countywide planning policy to the 'legislative authority' of a county. Referendum rights do not exist when power has been statutorily delegated to the 'legislative authority' ". 123 Wn.2d at 156; RCW 36.70A.210(2). The court further concluded that the GMA did not contemplate referendum rights because the statute "describ[ed] the proper form of 'public participation' " without reference to referendum, and that when a statute designates some things but omits others, an inference arises that things omitted were intentionally omitted. *Anderson*, at 157. The court concluded that "[t]he absence of any mention of referenda indicates the statute's rejection of referendum rights". *Anderson*, at 157.

Given that Washington case law clearly mandates that if a statutory grant of authority is vested in the legislative authority of a local government whether county or city, initiative and referendum are precluded, S.O.S. Park next con-

---

[7]We note that *Anderson* did not cite either *Lince* or *Leonard* for support of its holding. Instead, *Anderson* relies on general case law that referendum and initiative rights do not exist when power has been statutorily delegated to the legislative authority. *See Neils v. Seattle, supra.*

tends that this distinction between a legislative delegation of power to a county and legislative delegation of power to a county's legislative authority is an "absurd" one. S.O.S. Park argues that all powers of the county must be exercised by the county commissioners, as they are the only persons authorized to represent the county. Therefore, S.O.S. Park claims, the power of initiative and referendum would be severely limited if all ordinances passed by the Board in its legislative capacity pursuant to state enabling acts were immunized from initiative or referendum.

Despite the possible erosion of the initiative and referendum power that occurs as a result of this distinction,[8] it has been well established in Washington case law. Our Supreme Court as recently as *Anderson* found the distinction valid because the responsibilities under the GMA were particularly suitable for the legislative authority and could not be carried out through initiative and referendum.

*Lince, Leonard,* and *Anderson* establish collectively that initiative and referendum are not compatible with zoning ordinances. In fact, the recent *Anderson* case appears to us to be a fairly sweeping rejection of referendum (and presumably initiative) in zoning matters. Courts in other states have cited *Lince* and *Leonard* for this proposition. *See Transamerica Title Ins. Co. v. Tucson,* 157 Ariz. 346, 350, 757 P.2d 1055 (1988) ("other jurisdictions [citing Washington] . . . prohibit[ ] zoning by initiative"); *Gumprecht v. Coeur D'Alene,* 104 Idaho 615, 618, 661 P.2d 1214 (1983) ("no room for direct legislation [in zoning] . . . through an initiative election [citing Washington]").

---

[8]*See* Philip A. Trautman, *Initiative and Referendum in Washington: A Survey,* 49 Wash. L. Rev. 55, 82-84 (1973). Trautman observes that:

"One wonders whether the state legislature in delegating certain powers to local government is very often thinking of the initiative and referendum when it authorizes the 'city council' or the 'legislative body' rather than the 'city' to do something, or whether the particular choice of words is happenstance. One wonders whether the legislature is not more likely concerned with the subject matter of the particular legislation and the felt need for delegation of authority to the local level without thinking about who at the local level should exercise the power. . . . The danger, of course, is that the wording in the statute will be taken at face value and will substitute for reasoning in the particular instance." (Footnote omitted.) Trautman, 49 Wash. L. Rev. at 83.

In conclusion, we observe that RCW 36.70, by its terms, delegates the power to zone to the Board of Commissioners, Clallam County's legislative authority. Therefore, the ordinance proposed by the initiative, which would repeal a portion of the Clallam County Zoning Code, is outside the scope of the initiative power. Because it is outside the scope of the power of the people to initiate legislation, we affirm the trial court's refusal to order the Board to hold a hearing and vote on the measure.[9]

Affirmed.

MORGAN, C.J., and HOUGHTON, J., concur.

---

[9]We need not address the Board's additional contention that provisions in the Clallam County Charter prohibit proposed zoning legislation through the initiative process.