# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| KERRY SLONE, a resident of the state of Washington, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION, | No. 56328-2-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | |
| Respondent, | |
| and | |
| SAFE SCHOOLS SAFE COMMUNITIES, | |
| Intervenors. | |

WORSWICK, J. — Kerry Slone, Gun Owners of America, Inc., and the Gun Owners

Foundation (collectively, "Slone") appeal the trial court's order granting and denying Slone's

motion for summary judgment in part, and granting partial summary judgment to the defendant

State and intervenor-defendant Safe Schools Safe Communities (Safe Schools).  Slone had filed

a complaint for declaratory and injunctive relief challenging the constitutionality of State

Initiative No. 1639 (I-1639), which was passed by voters and codified in 2018.  Slone alleged

that the pre-election petitions for I-1639 did not comply with the requirements of RCW

29A.72.100 and the "full text" requirement of article II, section 1(a) of the Washington Constitution because they did not include strikethroughs of proposed deleted text, underlines of proposed new text, and because the font was too small.

The trial court agreed that the petitions did not comply with the statutory and constitutional requirements, but ruled that Slone's requested relief, invalidation of I-1639 as enacted, was not available under any statute or the plain language of the constitution. Accordingly, the court granted Slone's motion for summary judgment on the issue of whether the pre-election petition complied with the statute and constitution, but denied Slone's motion in all other respects and granted summary judgment to the non-moving parties, the State and Safe Schools.

On appeal, Slone argues that the trial court erred when it determined article II, section 1(a) and RCW 29A.72.100 to be unenforceable. The State argues that the constitution provides no authority for invalidating the initiative after the voters approved it. Safe Schools joins the State and further argues that the I-1639 petitions complied with the "full text" requirement of the constitution and statutory provisions. We agree with Safe Schools. Accordingly, we affirm.

FACTS

I. BACKGROUND

In May 2018, initiative I-1639 was filed with the Secretary of State. The measure sought to change gun safety laws and amend various provisions of chapter 9.41 RCW, Firearms and Dangerous Weapons. The text of the measure filed with the Secretary of State included underlined text to show additions to the current statute, and strikethroughs to show deletions.

Every proposed deletion was further indicated by two sets of parentheses around the proposed deleted text.

The pre-election petition was printed on 11 inch by 17 inch paper with the signature blanks on one side and the proposed measure's text on the reverse. However, the proposed text printed on the petition omitted the underlines and strikethroughs that appeared in the copy filed with the Secretary of State. The proposed text on the petition was also in a small font so as to fit onto a single sheet. The text on the petition retained the double parentheses around proposed deletions.[1]

I-1639 received the requisite number of signatures and the Secretary of State certified it to the ballot.[2] The text of the proposed measure, including the underlines, strikethroughs, and parentheses, was included in the voter's pamphlet. In the November 2018 election, voters passed I-1639 by a margin of more than 500,000 votes.

## II. PRE-ELECTION CHALLENGES

In June 2018, several parties filed an action in our Supreme Court, seeking mandamus, declaratory, and injunctive relief to prohibit the Secretary of State from accepting the petitions for signature counting. Ruling Den. Mots. and Dismissing Original Action Against State

---

[1] In addition to the multiple copies of the petition in the Clerk's Papers, at oral argument Safe Schools supplied us with a true-to-size copy of the original petition as it was presented to signers. *See* Wash. Court of Appeals oral argument, *Slone v. State*, No. 56328-2-II (Mar. 17, 2022), at 29 min., 30 sec. to 30 min., 30 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. Safe Schools presented this as a demonstrative exhibit under RAP 11.4(i).

[2] Slone states that signature gatherers used "'deceptive' tactics" to obtain signatures. Br. of Appellant at 5. However, nothing in the record on appeal shows any deceptive tactic, nor does the record contain any declaration from signers who were misled or otherwise deceived.

No. 56328-2-II

Officer, *Second Amend. Found. v. Wyman*, No. 96022-4, at 1-2 (Wash. Jul. 3, 2018). The plaintiffs in *Second Amendment Foundation* argued that the I-1639 petitions were invalid because the font of the proposed measure on the reverse of the petitions was unreasonably small and failed to include the underlining and strikethroughs. Ruling Den. Mots., No. 96022-4, at 2. The Commissioner of the Supreme Court denied the request and dismissed the claim. Ruling Den. Mots., No. 96022-4, at 1, 4. The Commissioner explained that under RCW 29A.72.170, the Secretary "'*may* refuse to file any initiative or referendum petition being submitted' if it is deficient in one or more enumerated ways."[3] Ruling Den. Mots., No. 96022-4, at 3 (quoting RCW 29A.72.170).

The Commissioner ruled that judicial review is not authorized where the Secretary did not refuse to file a petition, and that the right to challenge is limited to the persons who submitted the petition for filing. Ruling Den. Mots., No. 96022-4, at 3 (citing *Schrempp v. Munro*, 116

---

[3] RCW 29A.72.170 provides:

> The secretary of state may refuse to file any initiative or referendum petition being submitted upon any of the following grounds:
>
> (1) That the petition does not contain the information required by RCW 29A.72.110, 29A.72.120, or 29A.72.130.
>
> (2) That the petition clearly bears insufficient signatures.
>
> (3) That the time within which the petition may be filed has expired.
>
> In case of such refusal, the secretary of state shall endorse on the petition the word "submitted" and the date, and retain the petition pending appeal.
>
> If none of the grounds for refusal exists, the secretary of state must accept and file the petition.

No. 56328-2-II

Wn.2d 929, 934, 809 P.2d 1381 (1991)). The Commissioner noted that "opponents to an initiative have no constitutional or statutory basis to impede the proponents' exercise of their right of petition." Ruling Den. Mots., No. 96022-4, at 3.

In July, another group of challengers sought an order barring I-1639 from appearing on the ballot. Order Reversing Mandamus, *Ball v. Wyman*, No. 96191-3, at 1-2 (Wash. Aug. 24, 2018).[4] The *Ball* plaintiffs requested review in Thurston County Superior Court, again arguing "that the print on the back of the I-1639 petitions [was] not a true, accurate, and readable copy of the proposed measure presented to the secretary and was thus not the 'full' text of the proposed measure." Order Reversing Mandamus, No. 96191-3, at 843 (citing RCW 29A.72.100; CONST. art. II, § 37).[5] Ball sought review under RCW 29A.72.240, which provides for judicial review where a referendum petition contains or does not contain the requisite number of signatures. Order Reversing Mandamus, No. 96191-3, at 843. The Superior Court granted Ball a writ of mandamus, finding that the proposed text on the petitions was not readable and did not strictly comply with the requirements of RCW 29A.72.100. Order Reversing Mandamus, No. 96191-3, at 843.

Our Supreme Court reversed and held that mandamus under RCW 29A.72.240 was limited to enforcing number-of-signature requirements. Order Reversing Mandamus, No. 96191-3, at 843. The Court also explained that the mandamus power is available only to enforce

---

[4] https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/961913Public OrderTerminatingReview08242018.pdf

[5] RCW 29A.72.100 requires that the petitions include "a readable, full, true, and correct copy of the proposed measure printed on the reverse side of the petition."

a state official's nondiscretionary duty. Order Reversing Mandamus, No. 96191-3, at 843. "Here, there is no legislative mandate that the secretary must decline to certify and present to voters an initiative based on failure to comply with the requirement that 'a readable, full, true, and correct copy' of the initiative appear on the back of every petition, or on legibility or formatting concerns." Order Reversing Mandamus, No. 96191-3, at 843 (quoting RCW 29A.72.100). As explained above, the measure proceeded to the November 2018 general election ballot and was passed by the voters.[6]

### III. PROCEDURAL HISTORY

In August 2020, Slone filed a complaint for declaratory and injunctive relief. Slone alleged that the I-1639 petition did not include the underlines or strikethroughs as submitted to the Secretary and that the text was so small and condensed that it was therefore unreadable. Slone alleged four causes of action. In her third cause of action, Slone sought declaratory judgment, alleging that I-1639 was contrary to law because it did not have "a readable, full, true, and correct copy of the proposed measure printed on the reverse side of the petition."[7] Clerk's Papers (CP) at 13-14 (quoting RCW 29A.72.100). Slone also alleged that the petition violated article II, section 1(a) of the constitution, which provides, in pertinent part, "Every such petition shall include the full text of the measure so proposed." CP at 14.

---

[6] Other opponents of I-1639 have unsuccessfully challenged the initiative's constitutionality. *See Mitchell v. Atkins*, 483 F. Supp. 3d 985, 989 (W.D. Wash. 2020).

[7] Slone based her first two causes of action on the right to bear arms under article I, section 24 of the constitution. These causes of action are not at issue in this appeal.

In her fourth cause of action, Slone sought an injunction preventing the provisions of I-1639 from being included and enforced as statute. Slone alleged, "The I-1639 petition was contrary to law, because the statutory language in the petition was incorrect, misleading, and unreadable, and there is no way to verify that the petition signers had the opportunity to read the full, true, and correct copy of the initiative text." CP at 14.

The State answered the complaint. The State admitted that the petitions did not contain the underlining and strikethroughs that were present in the proposed measure submitted to the Secretary. Slone then moved for summary judgment, arguing that because the parties agreed the underlining and strikethroughs were not present, and because of the small font size, I-1639 therefore violated article II, section 1(a) and RCW 29A.72.100.

The day after Slone moved for summary judgment, Safe Schools filed a motion to intervene as a defendant. The trial court granted the motion.

The State and Safe Schools each filed responses to Slone's motion for summary judgment. The State argued that the voters cured any defect with the petition when they voted to enact the initiative. The State further argued that Slone conflated the standards of the qualification stage and the enactment stage of the initiative process, and that the validity of the measure as enacted must be determined from the election and not the substance of the initiative. The State framed their argument: "[T]he manner in which the measure text was printed on the I-1639 petitions is not at issue in this case. The question presented here is whether a defect in printing a petition invalidates the voters' subsequent enactment of the initiative." CP at 267. The State also argued for the case to be dismissed under the statute of limitations or the doctrine of laches.

Safe Schools argued that no post-election challenge to the initiative process was available to Slone. In the alternative, Safe Schools argued that substantial compliance, rather than strict compliance, was the standard for compliance under the constitution and the statute. Safe Schools explained the text was not "incomprehensible:"

> Every word in the Initiative appeared on the I-1639 petition, including all proposed new provisions of law. Section headings indicated new sections and amendments to existing statutes, and deletions were indicated by enclosure in double parentheses. No words were missing or added; only the amendatory formatting lines were inadvertently omitted. The double parentheses that enclosed deleted provisions indicated these provisions were set off from the remainder of the text— indeed, if the text was read while disregarding the language in double parentheses, the result is the law as set forth in the RCW.

CP at 400.

The trial court entered an order granting Slone's motion for summary judgment in part, denying it in part, and also granting partial summary judgment in favor of the non-moving parties, the State and Safe Schools. The court ruled, in pertinent part:

> 2. [Slone's] Motion for Partial Summary Judgment is GRANTED to the limited extent that this Court declares as a matter of law that the pre-election petitions circulated to qualify Initiative 1639 for the ballot did not comply with the requirements of RCW 29A.72.100 and the "full text" requirement of article II, section 1(a) of the Washington Constitution;
>
> 3. [Slone's] Motion for Partial Summary Judgment is DENIED in all other respects, based upon the Court's conclusion as a matter of law that [Slone's] requested relief, invalidation of Initiative 1639 as enacted, is not available under the statutes of this State nor in the plain language of the Constitution based on the third and fourth causes of action set forth in the complaint.
>
> 4. The Court GRANTS summary judgment in favor of the non-moving parties, Defendant State of Washington and Intervenor-Defendant Safe Schools Safe Communities, dismissing the third and fourth causes of action set forth in the complaint except as provided in paragraph 2, above.

CP at 518-19.

No. 56328-2-II

The court also denied Slone's request to certify the decision for immediate appeal under CR 54(b).

Slone then filed a motion for revision. Slone argued that the court erred in concluding that I-1639 could not be invalidated and that the court should certify the issues for appeal under CR 54(b). The court denied Slone's motion to revise its decision on the merits, but certified its order under CR 54(b). CP at 564-65. Slone then filed a notice of appeal to the Supreme Court. The Supreme Court then transferred the case to this court. Order, *Slone v. State*, No. 99469-2 (Aug. 11, 2021).

ANALYSIS

Article II, section 1 of the Washington Constitution provides, in pertinent part:

> The legislative authority of the state of Washington shall be vested in the legislature . . . but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature . . . .
>
> (a) Initiative: The first power reserved by the people is the initiative. *Every such petition shall include the full text of the measure so proposed.* . . .
> . . . .
>
> (d) The filing of a referendum petition against one or more items, sections, or parts of any act, law, or bill shall not delay the remainder of the measure from becoming operative. . . . All elections on measures referred to the people of the state shall be had at the next succeeding regular general election following the filing of the measure with the secretary of state, except when the legislature shall order a special election. *Any measure initiated by the people or referred to the people as herein provided shall take effect and become the law if it is approved by a majority of the votes cast thereon*: *Provided*, That the vote cast upon such question or measure shall equal one-third of the total votes cast at such election and not otherwise. Such measure shall be in operation on and after the thirtieth day after the election at which it is approved. . . . All such petitions shall be filed with the secretary of state, who shall be guided by the general laws in submitting the same to the people until additional legislation shall especially provide therefor. *This section is self-executing, but legislation may be enacted especially to facilitate its operation.*

(Emphasis added.)

9

RCW 29A.72.100 provides, in pertinent part:

The person proposing the measure shall print blank petitions upon single sheets of paper of good writing quality (including but not limited to newsprint) not less than eleven inches in width and not less than fourteen inches in length. Each petition at the time of circulating, signing, and filing with the secretary of state must consist of not more than one sheet with numbered lines for not more than twenty signatures, with the prescribed warning and title, . . . *and have a readable, full, true, and correct copy of the proposed measure printed on the reverse side of the petition.*

(Emphasis added.)

Slone argues that the text of the measure in the I-1639 petition violates the "full text" language of article II, section 1(a), and that it did not provide "a readable, full, true, and correct copy of the proposed measure." RCW 29A.72.100. Slone further argues that the trial court erred when it concluded that invalidation of I-1639 as enacted is not available. Slone cites the "self-executing" language in article II, section 1(d) to argue that the "full text" requirement of section 1(a), and by extension RCW 29A.72.100, are enforceable without legislative action. Br. of Appellant at 16-22. The State argues that article II, section 1 provides no authority for invalidating an initiative after voters approve it on the ballot, and that an initiative approved by the voters is constitutionally enacted. Safe Schools argues that the I-1639 petitions complied with the constitutional and statutory "full text" requirements, despite the petitions omitting the underlining and strikethroughs. We agree with Safe Schools. Accordingly, we do not reach the remaining arguments.

I. CONSTITUTIONAL FULL TEXT REQUIREMENT

Slone argues that the trial court erred when it concluded the "full text" requirement of article II, section 1(a) to be unenforceable because it is "self-executing" under section 1(d) and

therefore enforceable without any additional constitutional language or statutory provision. Br. of Appellant at 14-19. Safe Schools argues against the trial court's conclusion that the text on the I-1639 petition violated the "full text" requirement of section 1(a) and argues that we should affirm because the record shows no constitutional violation. We agree with Safe Schools that the text of the petition did not violate article II, section 1(a).

A.      *Standard of Review*

We review an order granting or denying summary judgment de novo, and we perform the same inquiry as the trial court. *Auto. United Trades Org. v. State*, 175 Wn.2d 537, 541, 286 P.3d 377 (2012). "A motion for summary judgment is properly granted where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Auto. United*, 175 Wn.2d at 541 (quoting CR 56(c)) (internal quotation marks omitted). "Findings of fact and conclusions of law are not necessary on summary judgment and, if made, are superfluous." *Johnson v. Lake Cushman Maint. Co.*, 5 Wn. App. 2d 765, 776, 425 P.3d 560 (2018) (internal quotation marks omitted). We may affirm on any ground supported by the record. *Modumetal, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 834, 425 P.3d 871 (2018). Additionally, we review the question of a statute's constitutionality de novo. *Auto. United*, 175 Wn.2d at 541.

We review questions of constitutional law de novo. *State v. Scott*, 190 Wn.2d 586, 591, 416 P.3d 1182 (2018). We seek to determine and give effect to the manifest purpose for which a constitutional provision was adopted. *State v. Barton*, 181 Wn.2d 148, 155, 331 P.3d 50 (2014). We look to the plain language of the constitutional text to accord it its reasonable interpretation, and we give words their common and ordinary meaning as they existed at the time they were

drafted. *Barton*, 181 Wn.2d at 155. We liberally construe the provisions of the constitution which reserve the right of initiative to facilitate that right. *Sudduth v. Chapman*, 88 Wn.2d 247, 251, 558 P.2d 806 (1977). We will not construe the constitution to hamper that right "by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake in the exercise by the people of this constitutional right." *Sudduth*, 88 Wn.2d at 251.

B.       *Constitutional "Full Text" Requirement*

Safe Schools argues that the petition text fulfilled the requirements of article II, section 1(a), despite omitting the strikethroughs and underlines and being printed in small font. We agree.

As stated above, article II, section 1(a) provides, in pertinent part, that petitions put forth by the people "shall include the full text of the measure so proposed." The text on the reverse of the I-1639 petition complies with the plain language of this requirement.

The record on appeal shows that every word in the proposed measure is included in the petition, in order. *Compare* CP at 16-45 (text as submitted to Secretary of State) *with* 47, 416 (petition). Nothing in the plain language of the constitution requires that the text of proposed measures in petitions include underlines or strikethroughs.[8] We will not read requirements into the constitution that its plain language does not support.[9] Moreover, reading the proposed text

---

[8] This appears to be a requirement for proposals printed in the voter's pamphlet, not petitions. RCW 29A.32.080.

[9] *See State v. Hastings*, 115 Wn.2d 42, 50, 793 P.2d 956 (1990) (declining to read into the constitution "that which is not there").

on the petition, it is comprehensible. Additionally, if the text in double parentheses is disregarded while reading, the result is the law as set forth in the RCW. And although the font is small, it is readable.[10]

Slone argues that Safe Schools argues "nothing new that was not already presented and rejected below" and that "two superior courts already have made factual findings and concluded that violations did occur." Reply Br. of Appellant to Safe Schools at 1, 5. Slone further argues that Safe Schools attempts to "undermine factual findings by the superior court." Reply Br. of Appellant at 1. But we review an order granting or denying summary judgment de novo, and we perform the same inquiry as the trial court. *Auto. United*, 175 Wn.2d at 541. And findings of fact, to the extent the trial court made any, are not necessary on summary judgment and are superfluous. *Johnson*, 5 Wn. App. 2d at 776.

Slone then argues that the lack of underlines and strikethroughs in the petition text were not inadvertent or technical. Instead, Slone argues that the omissions of the underlines and strikethroughs were "deliberate and willful" so as to confuse potential signers as to the intent of the proposed measure. Reply Br. of Appellant to Safe Schools at 8-9. But this is beside the point. The question here is whether the text on the petition was the "full text" under the plain language of the constitution, not the intent of the individuals who printed the signature pages.[11]

---

[10] Although the plain text of the constitution does not require readability, it follows from the constitution's "full text" requirement that potential signers of a petition be able to read said text.

[11] Moreover, nothing in the record shows that the differences in the text were done willfully to mislead, nor that any signer of the petition was misled by the text.

As noted above, we may affirm on any ground supported by the record. *Modumetal*, 4 Wn. App. 2d at 834. We hold that the record here shows that the text of the proposed measure on the petitions was the "full text" under the plain language of article II, section 1(a) of the constitution.

C.      *Statutory Requirements*

For the same reasons, we agree with Safe schools that the text of the petition provided "a readable, full, true, and correct copy of the proposed measure" under RCW 29A.72.100. The plain language of the statute contains no requirement for strikethroughs, underlining, or font size. Accordingly, under a plain language reading of the unambiguous text of the statute, the text in the proposed measure complied with RCW 29A.72.100.

Furthermore, RCW 29A.72.100 requires that the text of petitions "must consist of not more than one sheet." This puts proponents of petitions for long measures in the difficult position of having to balance font size and paper size to avoid circulating inordinately large, unwieldy petition forms. Here the proponents used the standard 11 inch by 17 inch petition, and small, but readable font. They complied with the plain language of the statute. Accordingly, we hold that the trial court properly dismissed Slone's third and fourth causes of action.

CONCLUSION

We hold that the text of the measure proposed in the I-1639 petition did not violate the "full text" requirement of article II, section 1(a) of the constitution. We further hold that the text of the measure was a readable, full, true, and correct copy of the proposed measure in accordance with RCW 29A.72.100. Accordingly, the trial court did not err in denying Slone's motion for

No. 56328-2-II

summary judgment and granting summary judgment in favor of the State and Safe Schools Safe

Communities.  We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

Worswick, P.J.

We concur:

Maxa, J.

Price, J.